**Affirmed and Memorandum Opinion filed January 29, 2019.**



In The

# Fourteenth Court of Appeals

NO. 14-18-00027-CR
NO. 14-18-00028-CR
NO. 14-18-00029-CR

## EX PARTE MARK DOUGLAS ROBISON

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause Nos. 1324897-B, 1324898-B & 1324899-B**

## MEMORANDUM OPINION

In this appeal from an order denying habeas corpus relief, we consider four claims of ineffective assistance of counsel. For reasons explained more fully below, we conclude that each claim is without merit. We therefore affirm the habeas court's order.

## BACKGROUND

***The Trial.*** Appellant was charged with three counts of possessing child pornography. Appellant testified that he knowingly possessed the pornography, but

he claimed that his possession was for a bona fide educational purpose, which is an affirmative defense to prosecution. More specifically, appellant explained that he possessed the pornography because he was researching the scope of child sexual abuse, which he aspired to end.

The prosecutor disputed the sincerity of this defense by pointing out that appellant never discussed his research until after he was indicted. For example, appellant never notified law enforcement before conducting his research, even though he knew that law enforcement frequently tracked the online distribution of child pornography. Similarly, appellant never reached out to a university, a peer review group, or an attorney before conducting his research. Also, he never even alerted his wife about his research.

The prosecutor drew attention to other omissions too. She established that appellant saved thousands of pornographic images to his personal computer, but no scholarly articles. She elicited testimony that appellant chose to remain silent during the execution of a search warrant, rather than explain to his investigators that he possessed child pornography for a bona fide educational purpose. She also elicited testimony that appellant never mentioned his affirmative defense to her during several pretrial hearings.

The jury rejected appellant's affirmative defense, convicted him on all three counts, and recommended that he receive a probated sentence.

***The Direct Appeal.*** Appellant raised three issues in his direct appeal to this court.

In his first issue, appellant argued that the trial court had reversibly erred when it refused to admit two of his self-published books into evidence. We assumed for

2

the sake of argument that the trial court had erred, but we concluded that the error was harmless under the standard for nonconstitutional error.

In his second issue, appellant asserted multiple claims of ineffective assistance of counsel. He first claimed that counsel was deficient by not moving to strike biased members of the venire panel. We concluded that this claim failed because the record did not conclusively establish that the challenged venirepersons were biased. Appellant argued next that counsel was deficient because counsel did not object when the prosecutor elicited testimony about appellant's pre-arrest silence, and because counsel himself also elicited testimony about the same pre-arrest silence. We concluded that these claims failed because the testimony was admissible and because a reasonable strategy could be imagined for counsel's actions. Finally, appellant argued that counsel was deficient by failing to object to the prosecutor's criticism of appellant's post-arrest silence during the pretrial hearings. Even though the record was silent as to counsel's strategy, we concluded that counsel was deficient because no reasonable explanation could be imagined for the failure to object. However, we held that counsel's deficiency did not result in any prejudice.

In his third issue, appellant argued that the prosecutor had engaged in several forms of misconduct by making improper comments about appellant's pre-arrest and post-arrest silence. We held that this issue was not preserved because counsel never objected to any instance of alleged misconduct.

Having overruled all of appellant's issues, we affirmed the trial court's judgment. *See Robison v. State*, 461 S.W.3d 194, 207 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

***The Petition for Discretionary Review.*** Appellant then petitioned for discretionary review before the Texas Court of Criminal Appeals. He asserted two grounds in his petition. First, he argued that the court of appeals had erred by

3

reviewing his evidentiary challenge under the standard for nonconstitutional error, instead of constitutional error. Second, he argued that the court of appeals had erred by holding that a claim of prosecutorial misconduct required a timely objection.

Appellant did not raise a complaint about the ineffective assistance of counsel, and the Court of Criminal Appeals refused his petition without comment.

***The Habeas Proceedings.*** Appellant then filed an application for writ of habeas corpus, in which he asserted four claims of ineffective assistance of counsel.

The first two claims had also been raised as issues in the direct appeal. In these claims, appellant asserted that counsel was deficient for failing to object when the prosecutor referred to appellant's pre-arrest and post-arrest silence.

The third claim was a variation on an issue that had been raised in the direct appeal. Appellant asserted in this claim that counsel was deficient because counsel did not present an argument to the trial court that would make the exclusion of the self-published books reviewable under the more rigorous standard for constitutional error.

The fourth claim was entirely novel. Appellant asserted that counsel was deficient by failing to present expert testimony from two psychologists during the guilt phase of the trial.

Counsel filed an affidavit, addressing his strategy as to each of these claims. The habeas court credited counsel's explanations and denied relief without the benefit of a live hearing. The habeas court also entered written findings of fact and conclusions of law.

Appellant now appeals from the order denying habeas corpus relief.

## ANALYSIS

***Standard of Review.*** To prevail on a claim of ineffectiveness, appellant had the burden of proving by a preponderance of the evidence that (1) his trial counsel's performance was deficient, in that it fell below an objective standard of reasonableness; and (2) but for counsel's deficient performance, the outcome would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The habeas court ruled that appellant did not satisfy this burden with respect to any of his claims. To the extent that the habeas court's ruling was based on an evaluation of credibility and demeanor, we review that ruling for an abuse of discretion, affording almost total deference to the court's findings when they are supported by the record. *See Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016). To the extent that the ruling was based on a pure question of law, or upon a mixed question of law and fact not depending on an evaluation of credibility and demeanor, our review is de novo. *See Ex parte De La Cruz*, 466 S.W.3d 855, 866 (Tex. Crim. App. 2015).

***Re-litigated Claims.*** The habeas court noted in its findings of fact that appellant's first two claims had already been raised and rejected on direct appeal. The habeas court further determined that relief should be denied as to these claims because "issues raised and rejected on direct appeal may not be reconsidered on a post-conviction writ." *See Ex parte Schuessler*, 846 S.W.2d 850, 852 n.6 (Tex. Crim. App. 1993) ("Habeas corpus is traditionally unavailable to review matters which were raised and rejected on appeal.").

Appellant invokes an exception to the habeas court's rule, arguing that a claim may be re-litigated "where direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding." *See Ex parte*

*Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Appellant believes this exception applies because "the structure and design of the Texas system . . . make it 'virtually impossible' for an ineffective assistance claim to be presented on direct review." *See Trevino v. Thaler*, 569 U.S. 413, 417 (2013).

For the sake of argument, we will assume without deciding that appellant was allowed to re-litigate his claims, because the outcome is the same in either event. We therefore proceed to the merits.

***Pre-arrest Silence.*** When appellant testified during the guilt phase of his trial, the prosecutor elicited testimony that appellant had been less than forthcoming when he met with investigators during the execution of a search warrant, which occurred before his arrest. The testimony established that appellant never mentioned his alleged research to the investigators when they were executing the search warrant; that appellant terminated a voluntary interview with the investigators and asked to speak to an attorney; and that appellant never disclosed to the investigators which of his personal computers possessed the child pornography. The prosecutor elicited similar testimony from the investigators, who testified that, after a certain point in his interview, appellant "didn't want to talk anymore" and "he stated he no longer wished to cooperate." The prosecutor emphasized all of this evidence in her closing arguments.

In the direct appeal, we were asked to consider whether counsel was deficient because counsel never objected to any of these references to appellant's pre-arrest silence. We held that counsel was not deficient because "evidence of the defendant's pre-arrest and pre-*Miranda* silence . . . may be admitted for purposes of impeachment without violating the defendant's Fifth Amendment right against self-incrimination." *See Robison*, 461 S.W.3d at 205. And in support of that holding, we cited to two cases from the Texas Court of Criminal Appeals: *Salinas v. State*, 369

6

S.W.3d 176 (Tex. Crim. App. 2012), *aff'd*, 570 U.S. 178 (2013) (plurality op.), and *Turner v. State*, 719 S.W.2d 190 (Tex. Crim. App. 1986).

Appellant did not challenge our analysis in a motion for rehearing or in his petition for discretionary review. But in his application for writ of habeas corpus, he disputed our reliance on *Salinas*, for apparently two reasons. First, appellant noted that, in his case, the evidence of pre-arrest silence was admitted for impeachment purposes, whereas in *Salinas*, the evidence of pre-arrest silence was admitted for substantive purposes because the defendant there did not testify. Second, appellant noted that when *Salinas* was considered by the United States Supreme Court, a majority of the justices there could not reach a consensus as to whether the Fifth Amendment was applicable to the use of a non-testifying defendant's pre-arrest silence.

These arguments fail for at least three reasons.

First, when we cited to *Salinas*, we were referring to the majority opinion from the Texas Court of Criminal Appeals, which is binding on us—not on the plurality opinion from the United States Supreme Court, which is not binding on us. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987) ("As the plurality opinion in *MITE* did not represent the views of a majority of the Court, we are not bound by its reasoning."); *Unkart v. State*, 400 S.W.3d 94, 100 (Tex. Crim. App. 2013) ("Plurality opinions do not constitute binding authority.").

Second, the majority opinion from the Texas Court of Criminal Appeals clearly holds that evidence of pre-arrest silence is admissible "regardless of whether a defendant testifies." *See Salinas*, 369 S.W.3d at 179 ("We hold that pre-arrest, pre-*Miranda* silence is not protected by the Fifth Amendment right against compelled self-incrimination, and that prosecutors may comment on such silence regardless of whether a defendant testifies.").

And third, appellant totally failed to address our citation to *Turner*, which involved evidence of pre-arrest silence for impeachment purposes, exactly like appellant's case. *See Turner*, 719 S.W.2d at 193 ("The attorney for the State was correct in his impeachment of the appellant through appellant's pre-arrest statements which failed to mention his alibi. The fact that the appellant failed to inform the police of his alibi on March 28 and April 7, 1983, when he had an opportunity to do so, and in circumstances in which he would be expected to speak out, was admissible to impeach the appellant at trial.").

In one final point, appellant asserts that "this Court should order factual development on the issue to determine counsel's thinking." But counsel has already explained his thinking. Counsel testified in his affidavit that he did not object to the prosecutor's comments about appellant's pre-arrest silence because he believed that such evidence was admissible for purposes of impeachment. Counsel was correct on that point, for the reasons we have stated here and in appellant's direct appeal. The habeas court was also correct in noting that "counsel cannot be found ineffective for failing to object to admissible evidence." *See Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012) ("The failure to object to proper questions and admissible testimony . . . is not ineffective assistance.").

***Post-arrest Silence.*** The prosecutor also remarked on appellant's post-arrest silence. More specifically, she elicited testimony that appellant had appeared for eleven pretrial hearings, and on each of those occasions, he never once approached her to explain that he had been researching child pornography for a bona fide educational purpose.

On direct appeal, we held that counsel was deficient by failing to object to this line of questioning. As we explained:

Appellant may have had an opportunity to approach the prosecutor and discuss the merits of his defense, but he was under no legal obligation to do so. *See Franklin v. State*, 606 S.W.2d 818, 848 (Tex. Crim. App. 1978) (op. on reh'g) ("Merely having the opportunity to say something does not constitute circumstances in which one would be expected to speak out."). The pretrial hearings were conducted for the limited purpose of resetting the case for a later date, and appellant was represented by counsel during each of the hearings. Appellant was entitled to rely on counsel's representation and avoid direct contact with the prosecutor, who acted as his legal adversary. The prosecutor's line of questioning was neither relevant nor appropriate, and we can think of no reason why counsel would not object to the improper criticisms of appellant's in-court silence.

*Robison*, 461 S.W.3d at 206.

But we further explained that counsel's deficiency did not result in any prejudice:

The jury heard testimony that appellant was silent during the execution of the search warrant and that he had not mentioned to his wife that he had been researching child pornography. That evidence of pre-arrest silence, which was admissible for impeachment purposes, had already cast serious doubt on appellant's credibility. There is no reasonable likelihood that the jury would have disregarded appellant's pre-arrest silence but not his in-court silence.

*Id.*

In response to appellant's habeas application, counsel offered the following explanation for his failure to object:

I did not object to the prosecutor's comments on Mr. Robison's post-arrest silence because the defense has no duty to inform the State of its available defenses. I did not want to alert the State during pre-trial settings of the *bona fide* educational affirmative defense (which, while certainly codified as an affirmative and available defense, is rarely applied).

9

Appellant correctly observes that this explanation misses the mark. The claim of ineffectiveness arises out of counsel's omissions during the trial on the merits (when appellant's defensive theory was already known to the prosecutor), not during the pre-trial settings (when the defensive theory may not have been known).

In any event, appellant could not prevail on this claim of ineffectiveness without establishing that the outcome of the trial would have been different but for counsel's failure to object. And as to that point, appellant did not develop any new facts in the habeas record that would alter our conclusion that he suffered no prejudice. Considering the abundance of admissible evidence that appellant had neglected to mention his research to anyone before his arrest, there is no reasonable likelihood that appellant's post-arrest silence moved the jury from a state of non-persuasion to a state of persuasion.

In the absence of any new factual points, appellant challenges our prejudice analysis with two new legal points.

First, appellant argues that we were "wrong" on direct appeal because the failure to object to post-arrest silence is itself prejudicial, citing *Hall v. State*, 161 S.W.3d 142 (Tex. App.—Texarkana 2005, pet. ref'd). But *Hall* is distinguishable because it involved evidence of post-arrest silence only (not pre-arrest silence too), and the defense attorney in that case was found to be deficient in more ways than just his failure to object to the post-arrest silence. *Id.* at 152–55. Also, the court of appeals in *Hall* conducted a full analysis of prejudice. *Id.* at 155–56. The court of appeals did not summarily conclude that the defendant was entitled to relief due to counsel's failure to object, as appellant would seemingly have us do.

Second, appellant argues that the prejudice from the post-arrest silence is cumulative of the prejudice from the pre-arrest silence, and that we cannot point to one error to excuse the other. This argument is fatally flawed because it depends on

10

the faulty premise that counsel was deficient by not objecting to the evidence of pre-arrest silence. As we explained in the direct appeal and again in this opinion, counsel was not deficient in that regard because the evidence of pre-arrest silence was admissible.

*Self-published Books.* Counsel offered into evidence two books that appellant authored and self-published. The first book was a collection of poems that appellant wrote nearly twenty years before child pornography was discovered on his personal computer. None of the poems expressly broached the subject of child pornography, but some addressed themes such as "right and wrong" and "nastiness" in the world.

The second book was an educational book that appellant wrote after he was indicted. This book was organized into three parts. The first part addressed appellant's personal relationship with child sexual abuse. The second part addressed the societal problems associated with child sexual abuse, including the harm to the child and the proliferation of child pornography. The third part included proposals for tackling such problems.

The prosecutor objected to both books on grounds of relevancy and hearsay. Counsel responded that he was not offering the books for the truth of the matter asserted. Counsel also explained that the book of poetry was relevant because it showed that appellant was trying "to get the word out." As for the educational book, counsel explained:

> It's directly relevant as to our affirmative defense as to educational use. [Appellant] has published a document relating to this. The jury can weigh the credibility as to whether it's bona fide or not. But he specifically talks about child pornography, specifically talks about child sexual abuse, references acts that are—most people would classify as that. So, it's part and parcel of our defense.

On direct appeal, we assumed without deciding that the trial court had erred by excluding the books. But we held that the errors were harmless under the standard for nonconstitutional error because the books were cumulative of other evidence. We explained that appellant had testified at length about the contents of his books. We also noted that appellant had produced evidence that he co-hosted a radio program and created a website, both of which were aimed at spreading awareness of child sexual abuse. "Thus," we held, "the jury was still able to consider whether appellant possessed the child pornography for a bona fide educational purpose." *See Robison*, 461 S.W.3d at 201–02.

In his habeas application, appellant asserted that counsel was deficient because counsel did not specifically argue that the exclusion of appellant's books amounted to a constitutional violation. Appellant asserted that if counsel had made that argument—for example, by objecting that the exclusion deprived him of his constitutional right to present a defense—then the exclusion of his books would have been reviewable under the standard for constitutional error, instead of nonconstitutional error.

Counsel did not directly respond to appellant's claim in his affidavit. Instead of addressing the distinction between the two standards for reversible error in criminal cases, counsel merely explained his actions as follows: "I believe I properly invoked Rule 401 of the Texas Rules of Evidence and sufficiently stated my reasons for offering the books into evidence, thereby preserving the complaint for appellate review."

The habeas court found that counsel's actions were appropriate, and we agree for the reasons stated in our opinion on direct appeal.

Also, we conclude that appellant's new arguments in this appeal are meritless. Contrary to appellant's suggestions, we would not have reviewed his evidentiary

12

complaints under the more rigorous standard for constitutional error if counsel had worded his objection differently. "The exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). As we explained in the direct appeal, appellant was not deprived of the right to present a defense because "the jury was still able to consider whether appellant possessed the child pornography for a bona fide educational purpose." *See Robison*, 461 S.W.3d at 201–02; *see also Vasquez v. State*, 501 S.W.3d 691, 700 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (rejecting a similar argument that the exclusion of evidence was reviewable under the standard for constitutional error).

***Expert Testimony.*** Counsel called two psychologists during the punishment phase of appellant's trial. The primary purpose of the psychologists' testimony was to establish that appellant was not at risk for harming children, and that he would be a good candidate for a sex-offender treatment program while on community supervision.

The psychologists addressed other matters too. They said that appellant admitted to knowingly possessing child pornography, and they indicated that it was possible for a person to possess such pornography without being physically or sexually aroused.

Appellant asserted in his habeas application that counsel was deficient by not calling the same two psychologists during the guilt phase of trial. According to appellant, the psychologists' testimony that a person could possess child pornography without being aroused by it would have supported a finding that he possessed his pornography for a bona fide educational purpose.

13

Counsel filed a response affidavit, which gave the following explanation for his actions:

> My trial strategy involving the two expert witnesses was very straightforward. [The psychologists] were called for the sole and express separate and respective purposes of providing a sex offender diagnostic assessment and then therapist's treatment. They were not consulted on providing expert testimony on Mr. Robison's claims of a *bona fide* educational purpose for viewing child pornography. [The psychologists] were integral to the overall defense of blunting the State's attack that Mr. Robison presented a clear and present danger within the community, and to show that there was absolutely no clinical support whatsoever for the State's comments that Mr. Robison was actually assaulting or could potentially assault children. Was Mr. Robison gathering computer-based images admittedly containing child pornography? Yes. Were those images then fueling later actions of assault against children? No. During guilt-innocence, the experts' testimony would have had to specifically addresses these issues, which [were] outside the scope of their engagement: (1) for a bona fide educational use of child pornography, were they aware that Mr. Robison had never approached law enforcement before he decided to investigate child pornography?; (2) for a bona fide educational use of child pornography, were they aware that Mr. Robison had made no attempt to contact any university, peer review group, or any attorney for guidance before or during his "research" into child pornography; (3) for a bona fide educational use of child pornography, were they aware that Mr. Robison had failed to even alert his wife about his desire to research the issue of child pornography (as evidenced by his wife's comments that she was unaware that he had been downloading child pornography); and (4) for a bona fide educational use of child pornography, were they aware that despite saving literally thousands of child pornographic images to his computer, he had written no scholarly peer reviewed articles on this subject?

The habeas court expressly found that counsel's trial strategy was reasonable.

Now on appeal, appellant challenges counsel's explanation by arguing that counsel was deficient by not enlarging the scope of the psychologists' engagement to include these other areas of discussion. This argument fails for two reasons.

14

First, the habeas court found that both psychologists had formed a preliminary diagnosis of appellant as "a possible pedophile." The habeas court also found that if the psychologists had been called to testify during the guilt phase of trial, this diagnosis would have been revealed to the jury. Counsel could have reasonably determined that the jury should not know this diagnosis when it was deciding appellant's guilt.

Second, the habeas court found that appellant "gave lengthy testimony during guilt-innocence as to his reasons for possessing child pornography, and the jury was free to disbelieve those reasons." Because the psychologists' testimony would have been cumulative at best, the habeas court found that appellant had not shown a reasonable likelihood of a different outcome. Appellant offers no challenge to this finding, which is supported by the record. Deferring to this finding as we must, we conclude that appellant failed to prove his claim of ineffective assistance of counsel.

## CONCLUSION

The habeas court's order is affirmed.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Bourliot, and Spain.
Do Not Publish — Tex. R. App. P. 47.2(b).